HARRIS *v.* MOORAD.

4-8747                                      217 S. W. 2d 618

Opinion delivered February 21, 1949.

*John C. Sheffield,* for appellant.

*A. M. Coates,* for appellee.

MINOR W. MILLWEE, J. Appellee, Abe Moorad, owned and operated a cafe and rooming house business in

Helena, Arkansas, known as the Commercial Cafe and Hotel. He became ill and in financial straits in the summer of 1946 when negotiations were begun with appellant, Nick Harris, for sale of the business.

On October 16, 1946, the parties entered into a contract of sale of the fixtures, equipment and good will of the business. At the time of the execution of the contract there was some controversy over the title to the two story building in which the business had been operated and it was uncertain whether a lease or possession could be secured of the building in which to carry on the business. This uncertainty was recognized in the sales contract which provided for a sale price of $3,500 of which $1,000 was paid in cash under the following conditions stipulated in the contract.: "If at any time within sixty (60) days from this date the buyer is able to obtain a written lease contract from the owners of the building as above described, then at such time the buyer will deliver to the seller the balance of twenty-five hundred dollars ($2,500).

"It is understood and agreed between the buyer and seller that in the event the buyer is not able to secure the kind and character of lease above described within sixty (60) days of this date, then the seller, at the option of the buyer, may on or before 60 days from this date, return to the buyer the said sum of One Thousand Dollars ($1,000) and this sales agreement shall be of no further effect, or the buyer may decline the option of the return of the said thousand dollars ($1,000) and accept the above described property as a completed sale and in such event, the seller agrees to deliver said property to said buyer on said buyer's demand.

"To make clear the reasons for the above conditions: It is agreed between the parties that if the buyer shall be able to have delivered to him the lease above described so that the buyer may continue the operation of the cafe and rooming house at the place above described, then the above property being sold to the buyer will be worth the said sum of Thirty-Five hundred dollars ($3,500). On the other hand, if the buyer is not able to

procure the lease above described, then the above described property will be worth only the sum of One Thousand Dollars ($1,000).''

Shortly after the execution of the sales contract appellee left Helena and went to Hot Springs, Arkansas, for his health and from there to Florida where he still resided at the time of the trial. Appellant took possession of the building soon after appellee's departure and has since operated the cafe and hotel except for a period of about two months when the place was closed for repairs and remodeling of the premises.

On November 16, 1946, J. Y. Ray of Cleveland, Mississippi, became sole owner of the building in which the business was being operated. Shortly thereafter appellant went to Cleveland with the view of leasing the building from Ray who expressed the desire to sell rather than lease the property. An agreement was reached whereby appellant purchased the building for $18,000, $3,000 of which was paid in cash with the balance payable at approximately $125 per month. Ray and wife conveyed the property to appellant on November 27, 1946.

Appellee testified that he wrote appellant four letters in December, 1946, and January, 1947, inquiring about the lease and requesting the payment of the $2,500, and that none of these letters was answered. Appellant admitted receiving two letters from appellee which he did not answer because he thought appellee should have come to see him. Appellant also testified that he discarded most of the fixtures and equipment purchased from appellee in the remodeling process and that the city health authorities forbade further use of a part of such equipment.

Upon appellant's refusal to pay the alleged balance of $2,500, this suit was instituted to recover such amount and to foreclose a lien upon the fixtures and equipment. In his answer appellant denied further liability under the contract on the ground that payment of the $2,500 balance was conditioned upon a lease of the building which he was unable to obtain. It was further alleged

that appellee breached the contract by failing to tender a return of the $1,000 after appellant's failure to secure the lease; that the closing of the business and the departure of appellee destroyed the value of the business as a going concern; and that appellant had been forced to pay certain indebtedness owed by appellee.

The chancellor found the issues in favor of appellee and rendered judgment against appellant in the sum of $2,212 which represented the balance of the purchase price of the business, less a credit of $288 which appellant paid to appellee's creditors.

For reversal of the decree appellant first argues that the value of the business as a going concern depended upon appellee's continued operation thereof until such time as appellant secured a five-year lease or it was determined whether such lease could be obtained, and that appellee, therefore, breached the contract and acted in bad faith by closing the business and leaving Helena. The contract did not require appellee to continue operation of the business and the preponderance of the evidence supports the conclusion that appellee was forced to discontinue and dispose of the business on account of his health and that appellant so understood at the time the contract was executed. The evidence also discloses that appellant took charge of the business soon after appellee left and that said business has been continued as a going concern except for the time necessary for repairs after appellant purchased the building.

Appellant also argues that payment of the $2,500 balance was absolutely dependent on the execution of the lease which he was unable to obtain. When the whole contract is construed, we think it is apparent that the parties intended that the purchase price of the business, which included good will, would be $3,500 if appellant could continue operation of the business at the same location. If, on the other hand, appellant had to move the fixtures and equipment to some other place and thereby be substantially deprived of the good will of the business, then the purchase price would be $1,000.

It is true that appellant did not obtain the lease, but upon learning that the building was for sale he immediately and voluntarily purchased it on terms requiring monthly payments which were shown to be considerably less than the rental value of the property. This purchase was made 17 days before expiration of the 60-day period set out in the contract and without any effort on appellant's part to contact appellee or allow him to return the $1,000 payment and cancel the sales contract. Even though appellant did not obtain the lease he elected to purchase the building and thereby secured the same advantages that would accrue under a lease and these advantages furnished the consideration for the larger purchase price.

The conclusion reached by the chancellor is not against the preponderance of the evidence and the decree is, therefore, affirmed.